UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EZEQUIEL PORTILLO RODRIGUEZ, (A209-343-448),<br><br>Petitioner,<br><br>v.<br><br>WARDEN,<br><br>Respondent. | No. 1:26-cv-00694-DAD-CKD<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner, a citizen of El Salvador, entered the United States for the first time in October 2016. ECF No. 16-1 at 3. U.S. Border Patrol agents apprehended Petitioner, who was then criminally charged and convicted under 8 U.S.C. § 1325 for illegal entry. Id; see also ECF No. 18-1 at 2, 3. On April 21, 2017, an immigration judge ordered Petitioner removed to El Salvador. ECF No. 18-1 at 2. The order was executed on June 8, 2017. Id. at 3. Petitioner re-entered the U.S. on July 11, 2022 and settled in Minnesota. ECF No. 1 at 6.

On April 9, 2025, Petitioner was indicted in the District of Minnesota for illegal re-entry. ECF No. 16-1 at 2. In August 2025, Petitioner was arrested for a traffic violation and brought to

Yolo County Jail where he was held on the illegal re-entry charge. ECF No. 18-1 at 2-3. A federal judge ordered Petitioner released on his own recognizance on September 2, 2025 for the illegal re-entry charge, but ICE officers detained him at Golden State Annex that same day and began the process of reinstating the prior removal order. ECF No. 1 at 5; 16-1 at 2; 18-1 at 2-3. Petitioner received a reasonable fear interview in which an asylum officer determined that Petitioner did not have a credible fear of persecution or torture upon return to El Salvador. ECF No. 16-1 at 11. After Petitioner appealed the asylum officer's decision, an immigration judge overturned it and placed Petitioner in withholding-only proceedings pursuant to 8 U.S.C. § 1231(b)(3).

Petitioner filed a petition for writ of habeas corpus pro se on January 26, 2026, claiming that prolonged detention without a bond hearing violates his Fifth Amendment right to due process. ECF No. 1. After appointment of counsel, Petitioner filed a motion for temporary restraining order seeking immediate release and an injunction against future detention without a hearing. ECF No. 16. Respondent opposed the motion for temporary restraining order, asserting that ICE properly exercised its authority to detain Petitioner under 8 U.S.C. § 1231(a)(6), that detention had not become prolonged, and that even if detention had become prolonged, Petitioner had not demonstrated that it is unlikely that he would be removed in the reasonably foreseeable future. ECF No. 18. On March 18, 2026, the District Judge assigned to this case converted the motion for temporary restraining order into a motion for preliminary injunction, granted the motion, ordered Respondent to release Petitioner from custody, and enjoined and restrained Respondent from re-detaining Petitioner without notice and a pre-detention hearing. ECF No. 20. Respondent released Petitioner from custody on March 19, 2026 and placed him under an order of supervision. ECF No. 26.

This matter has been referred to the undersigned for further proceedings. ECF No. 20. Respondent opposes habeas relief, claiming that Petitioner is subject to a final order of removal and that Petitioner has not met his burden to demonstrate unlikelihood of removal in the reasonably foreseeable future. ECF No. 23. Petitioner countered that El Salvador has not issued travel documents to Petitioner, and Respondent has not shown that removal would occur

expeditiously. ECF No. 24.

**II. Detention Authority**

Respondent detained Petitioner pursuant to 8 U.S.C. § 1231(a), which governs the detention of noncitizens after a final order of removal has been issued. Detention is mandatory during the 90-day "removal period" following the entry of a final order of removal. See 8 U.S.C. § 1231(a)(1)-(2). "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and [the Ninth Circuit Court of Appeals] stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (quoting 8 U.S.C. § 1231(a)(1)(B)(i)-(iii)). Petitioner was issued a final order of removal on April 21, 2017, which was reinstated on or about August 31, 2025. ECF No. 18-1 at 2-3. The application for withholding of removal has no effect on the finality of the underlying removal order. Johnson v. Guzman-Chavez, 594 U.S. 523, 540 (2021). The period of removal therefore began when the removal order was reinstated, and has since elapsed.

Detention after the expiration of the removal period is governed by 8 U.S.C. § 1231(a)(6). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After the 90-day removal period has elapsed, ongoing detention is only authorized for noncitizens who are inadmissible under § 1182, removable under certain subsections of § 1227, or who the government determines to be a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). ICE charged Petitioner as being inadmissible under § 1182(a)(9)(C)(i)(II), subjecting him to detention pursuant to §1231(a)(6). ECF No. 18-1 at 2.

**III. Due Process**

Petitioner claimed that his detention, which exceeded six months, had become unreasonably prolonged and that there was no significant likelihood of removal in the reasonably foreseeable future. See Zadvydas v. Davis, 533 U.S. 678 (2001) (finding six months to be the

presumptive limit of reasonable detention under § 1231 and that after that time period, once a noncitizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government bears the burden to rebut that showing). The undersigned agrees with the District Judge's finding that Petitioner's application for withholding of removal supported a finding that there is not a significant likelihood of removal in the reasonably foreseeable future. ECF No. 20, citing Asfestani v. Current or Acting Field Office, No. 1:25-cv-01562-SCR, 2025 WL 3677321, at *5 (E.D. Cal. Dec. 18, 2025) ("The existence of such a pending application also contributes to the showing that there is good reason to believe that there is no significant likelihood of petitioner's removal in the reasonably foreseeable future."). Respondent has not rebutted this finding. Respondent argued that Petitioner is able to return to El Salvador as soon as removal proceedings are completed but has not represented to this Court that removal proceedings have been completed nor shown that El Salvador will accept Petitioner for removal. The undersigned therefore finds that Petitioner's prolonged detention violated due process.

The undersigned now turns to whether the due process violation warrants further relief, specifically whether the preliminary injunction against re-detention without a hearing should be made permanent.

As Petitioner has been released from § 1231 detention, he is now subject to conditions of release pursuant to 8 C.F.R. § 241.13(h). These regulations permit ICE to revoke release if it determines the noncitizen has not complied with the terms of release or that there is a significant likelihood that the noncitizen may be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(i). The procedures for revocation include notice to the noncitizen, an informal interview, an opportunity for the noncitizen to submit evidence, and an evaluation of any contested facts. 8 C.F.R. § 241.13(i), (f). This court has previously found that these regulations provide "no opportunity to have a neutral party evaluate ICE's unilateral determination of the contested facts." Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *7 (E.D. Cal. Aug. 20, 2025) (citing Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1024 (N.D. Cal. July 17, 2025)). The undersigned therefore applies the three-part analysis identified in Mathews v. Eldridge, 424

U.S. 319 (1976) to determine whether due process requires a pre-deprivation hearing before any future detention. Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

Petitioner has a strong private interest in his continued release. Petitioner has been out of custody on supervised release since March 2026. He is not scheduled to check in again with ICE until February 2027. ECF No. 26. He also has a wife and three children in the United States. ECF No. 1. The length of time he has been on supervised release combined with his family ties strengthens Petitioner's interest in his continued release. Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Moreover, the actions of the Government in allowing Petitioner to remain in the community for over five years strengthen Petitioner's liberty interest. Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."); see also Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *4 ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

As to the second Mathews factor, "[t]he lack of any neutral review [pursuant to 8 C.F.R. § 241.4] creates a heightened risk of deprivation for Petitioner." Guillermo M.R., 791 F. Supp. 3d at 1034; see also Ortega v. Bonnar, 415 F. Supp. 3d at 970 (N.D. Cal. Nov. 22, 2019) (finding that the government's position that a material change of circumstances had occurred justifying re-detaining the petitioner increased the risk of erroneous deprivation without a hearing before a neutral adjudicator); Vargas v. Jennings, No. 20-cv-05785-PJH, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020) (same). Accordingly, "absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process[.]" Guillermo M.R., 791 F. Supp. 3d at 1036; see also Diaz v. Kaiser, No. 3:25-cv-05071-BLF, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (finding that the risk of erroneous deprivation of the petitioner's liberty interest in remaining out of custody would be lessened by a pre-detention hearing before an immigration judge).

The government's interest in detaining Petitioner without a hearing is minimal. Several courts have found that the costs associated with providing petitioners with a pre-detention hearing prior to revocation of release are low and that the government's interest in not providing such a hearing is also low. See Guillermo M.R., 791 F. Supp. 3d at 1036–37 ("Respondents characterized Petitioner's requested relief as an 'unprecedented' pre-arrest bond hearing[.] ... However, the concept that an individual who is not subject to detention may request custody redetermination from an IJ is not novel....Courts in this district have also regularly required pre-arrest hearings pursuant to the due process clause."); see also Garcia, 2025 WL 1927596, at *5 ("[T]he Court finds the Respondents' interest in placing Petitioner in detention without a hearing is low. The effort and cost required to provide Petitioner with procedural safeguards is minimal and indeed was previously provided in his case."); J.L.R.P. v. Wofford, No. 1:25-cv-01464-KES-SKO, 2025 WL 3190589, at *10 ("[T]he government's interest in detaining petitioner without a hearing is 'low.' ")

Petitioner has an acquired liberty interest in remaining out of custody, and the risk of erroneous deprivation will be meaningfully reduced by requiring a pre-detention hearing before an immigration judge, which imposes a minimal burden on the government. As such, the undersigned concludes that the Mathews factors weigh in favor of granting permanent relief.

**IV. Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be GRANTED;

2. The grant of preliminary relief become permanent and Respondent be ENJOINED AND RESTRAINED from re-detaining Petitioner without providing Petitioner notice and a pre-detention hearing before an immigration judge who must determine whether revocation of release is warranted per 8 C.F.R. § 241.13(i)

3. The Clerk of Court be directed to enter judgment and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: 08/28/26

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 port0694.imm.fnr